OFFICE COPY   JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 7445

| YUCAIPA AMERICAN ALLIANCE FUND I, LLC, | 08 Civ. _____ ( ) |
|---|---|
| Plaintiff, | |
| -against- | **COMPLAINT** |
| WALSH WESTERN INTERNATIONAL GROUP (now known as syncreon International Group), | |
| Defendant. | |



Plaintiff Yucaipa American Alliance Fund I, LLC, a Delaware limited liability company ("Yucaipa"), by and through its undersigned counsel, Latham & Watkins LLP, for its claims against Defendant Walsh Western International Group (now known as syncreon International Group), an unlimited corporation incorporated under the laws of Ireland ("WWI"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of Delaware and California, on the one hand, and a citizen of Ireland, on the other hand.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the parties expressly agreed in Section 12.14 of that certain Agreement of Merger Among Walsh Western International Group, WWI Acquisition Holding Corp., and TDS Logistics, Inc. (dated as of February 1, 2007) (the "Merger Agreement"), that this Court would serve as the exclusive forum for any disputes:

Each of the parties to this Agreement hereby irrevocably and unconditionally submits, for itself and its assets and properties, to the exclusive jurisdiction of any New York State court in New York County, or Federal court of the United States of America, sitting within New York County in the State of New York, and any respective appellate court, in any action or proceeding arising out of or relating to this Agreement, the agreements delivered in connection with this Agreement, or the transactions contemplated hereby or thereby, or for recognition or enforcement of any judgment relating thereto, and each of the parties to this Agreement hereby irrevocably and unconditionally (i) agrees not to commence any such action or proceeding except in such courts; (ii) agrees that any claim in respect of any such action or proceeding may be heard and determined in such New York State court or, to the extent permitted by law, in such Federal court; (iii) waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any such action or proceeding in any such New York State or Federal court; and (iv) waives, to the fullest extent permitted by law, the defense of lack of personal jurisdiction or an inconvenient forum to the maintenance of such action or proceeding in any such New York State or Federal court.

## THE PARTIES

3. Plaintiff Yucaipa is a Delaware limited liability company with its principal place of business located at 9130 West Sunset Boulevard, Los Angeles, California 91604

4. Defendant WWI is an unlimited corporation incorporated under the laws of Ireland, with its principal place of business located at Unit 1A, Airport Business Park, Cloghran, Dublin Airport, Ireland.

5. WWI expressly consented in the Merger Agreement (Section 12.14) to service of process in the manner provided for notices in the Merger Agreement, namely by any one of the following means: "personally delivered or transmitted by facsimile (when receipt of transmission is confirmed), one day after deposit with Federal Express or similar overnight courier service or three days after being mailed by first class mail, return receipt requested."

## GENERAL ALLEGATIONS

6.  In 2007 pursuant to the Merger Agreement, WWI and its affiliate acquired TDS. Yucaipa was a substantial holder of TDS stock, and as a result was designated the "Shareholder Representative" pursuant to Section 9.01 of the Merger Agreement. In that capacity, Yucaipa serves

> as the representative of the Shareholders and Common Stock Option Holders with respect to the matters expressly set forth in this Agreement to be performed by the Shareholder Representative. Should the Shareholder Representative resign or be unable to serve, the Shareholder Representative shall appoint a single substitute agent to take on the responsibility of the Shareholder Representative hereunder, whose appointment shall be effective on the date of the Shareholder Representative's resignation or incapacity.

7.  In connection with the Merger Agreement, an escrow fund was established in the aggregate sum of $27,000,000, of which $25,000,000 (plus interest) remains in escrow (the "Escrow Fund"). As is customary in such transactions, the Escrow Fund serves (without narrow, limited exceptions) as the sole recourse for WWI for arising out of "any losses, out-of-pocket costs or expenses, liabilities or other damages (collectively, 'Losses'), which the Parent [suffers] as a result of" specified events. (Merger Agreement, § 8.02(a).)

8.  In connection with the Merger Agreement, Yucaipa, WWI, and Wells Fargo Bank entered into that certain Escrow Agreement among Yucaipa, WWI, and Wells Fargo Bank, National Association (dated as of March 1, 2007) (the "Escrow Agreement"). The Escrow Agreement establishes procedures and a deadline for WWI to make claims against the Escrow Fund. In particular, Section 5(c) of the Escrow Agreement provides that, in the event WWI makes a claim against the Escrow Fund by sending a "Claim Certificate" to the Escrow Agent, Yucaipa shall have 20 business days to dispute the Claim Certificate by written notice to the Escrow Agent (a "Disputed Claim Notice").

9. In the event Yucaipa submits a timely Disputed Claim Notice, the Escrow Agent shall not disburse any part of the Escrow Fund to WWI until Yucaipa and WWI resolve the dispute over the Claim Certificate consensually, by "a final, non-appealable judgment or non-appealable order from a court of competent jurisdiction," or by "a final, non-appealable, and binding decision" issued through consensual arbitration.

10. On April 28, 2008, WWI tendered a purported claim certificate to Yucaipa and the Escrow Agent (the "Purported Claim Certificate"). The Purported Claim Certificate set forth a schedule of claims totaling $21,107,571, plus an unliquidated claim which WWI claims "is not able to be calculated at this time."

11. The Purported Claim Certificate is invalid because it fails to meet the requirements of Section 5(c)(i) of the Escrow Agreement and Section 8.07 of the Merger Agreement. Those sections were included to prevent vague and unsubstantiated claims aimed at delaying distribution of the Escrow Fund, which plainly has happened here. Those sections require that, in order for any indemnification claim to be valid, it must state in reasonable detail the nature of, and factual and legal basis for, any claim for indemnification, and state, with respect to each individual claim, an estimate of the amount thereof that is payable or reimbursable from the Escrow Fund after the application of any adjustments and limitations applicable thereto pursuant to Article VIII of the Merger Agreement. The Purported Claim Certificate fails to meet these basic requirements, and is *void ab initio* in its entirety on that basis.

12. Given WWI's failure to provide any detail to substantiate the claims in the Purported Claim Certificate and in an effort to find a constructive solution without litigation, on May 19, 2008 Yucaipa requested in writing that WWI provide additional, specific information. In its May 19th letter, Yucaipa explained that the Purported Claim Certificate did not meet the requirements of Section 5(c)(i) of the Escrow Agreement and Section 8.07 of the Merger

4

Agreement, which prevent vague and unsubstantiated claims aimed at delaying the distribution of the Escrow Fund. Those sections require that, for any indemnification claim to be valid, it must state in reasonable detail the nature of, and factual and legal basis for, any claim for indemnification, among other information. Yucaipa noted that the Purported Claim Certificate failed to meet those basic requirements and on that basis alone is invalid in its entirety. In addition, Yucaipa set forth its dispute as to the entirety of the Purported Claim Certificate, and, to the extent possible based on the limited information provided by WWI, Yucaipa addressed certain of the claims set forth in the Purported Claim Certificate. Finally, Yucaipa noted that in many instances, it appeared that WWI's claims were inconsistent with the terms of the Merger Agreement and/or sought recovery for amounts that were not actual damages. Section 8.02(c) of the Merger Agreement unequivocally provides that only actual damages are indemnifiable. All other types of damages, including lost profits or any consequential or incidental damages, are not indemnifiable.

13. Having received no response to the May 19th letter, Yucaipa sent a follow-up letter on Jun 17, 2008, and also had its counsel contact WWI's counsel, both in an effort to obtain the information Yucaipa requested on May 19th. Although WWI still had not provided any written response to Yucaipa's letters, on July 3, 2008, executives from Yucaipa and WWI and their counsel conducted a teleconference to discuss these issues. During the conference, Yucaipa explained that WWI had not provided information required under the Escrow Agreement or sought in Yucaipa's May 19th letter; as a result, Yucaipa lacked sufficient information on most of WWI's claims to make informed decisions on their merits, or to determine if they sought indemnifiable Losses.

14. Following that conference (on July 16, 2008), WWI provided a letter purporting to respond to Yucaipa's pending request for information. WWI's July 16th letter did not include

the bulk of the information Yucaipa had requested or was required under the Escrow Agreement; as such, it remained insufficient to permit Yucaipa to assess the validity of WWI's claims or determine the amounts of indemnifiable Losses, if any. WWI's apparent unwillingness to provide this missing information and basic substantiation for its claims renders its Purported Claim Certificate invalid under the Escrow and Merger Agreements. On this basis alone, WWI's claim for a release of funds from the Escrow Fund is barred. Moreover, Yucaipa is informed and believes that WWI seeks release of sums from the Escrow Fund for claims which are not indemnifiable Losses. Accordingly, Yucaipa brings this action so that it can obtain a determination that WWI is not entitled a release from the Escrow Fund, or, at a minimum, compel WWI to provide information necessary to establish whether any of its claims are valid and set forth any indemnifiable Losses (and the extent of such losses, if any).

## FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF

### (Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202)

15. Yucaipa repeats and realleges each and every allegation contained in Paragraphs 1 through 14 of this Complaint as though fully set forth herein.

16. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights or legal relations of any party in any case involving an actual controversy.

17. An actual controversy has arisen and now exists between Yucaipa and WWI, in that WWI contends that it is entitled to a release of funds from the Escrow Fund pursuant to the Claim Certificate.

18. Yucaipa disputes WWI's Claim Certificate, and contends that WWI is not entitled to any release of funds from the Escrow Fund, and that $13,000,0000 be disbursed immediately

from the Escrow Fund to the Shareholder, for the benefit of the Shareholders and Common Stock Option Holders.

19. Yucaipa therefore requests and is entitled to a judicial determination as to the rights and obligations of the parties, and such a judicial determination of these rights and obligations is necessary and appropriate at this time. Yucaipa further requests an award of its attorneys' fees and expenses incurred in connection with this matter, pursuant to Section 9.04 of the Merger Agreement which provides that Yucaipa "shall be entitled to the payment of all expenses incurred as the Shareholder Representative . . . ," which shall be paid from the Escrow Fund.

## PRAYER FOR RELIEF

WHEREFORE, Yucaipa prays that the Court enter a declaration that WWI's is not entitled to any release of funds from the Escrow Fund, that $13,000,0000 be disbursed immediately from the Escrow Fund to the Shareholder, for the benefit of the Shareholders and Common Stock Option Holders, that Yucaipa be awarded its attorneys' fees and expenses incurred in connection with this matter, and for such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         August 22, 2008

Respectfully submitted,

LATHAM & WATKINS LLP

By _____

Christopher R. Harris

885 Third Avenue, Suite 1000
New York, NY 10022
(212) 906-1200

Attorneys for Plaintiff
Yucaipa American Alliance Fund I, LLC

*Of Counsel:*

Daniel Scott Schecter

LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071
(213) 485-1234